IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
No.:  5:24-CV-00249-KDB-DCK

| | | |
|---|---|---|
| AALIYAH MUNGRO, | : | |
| | : | |
| Plaintiff | : | **PLAINTIFF'S** |
| v. | : | **MEMORANDUM OF LAW** |
| | : | **IN OPPOSITION TO THE** |
| CITY OF CLAREMONT, et al. | : | **SBI DEFENDANTS'** |
| | : | **12(b)(6) MOTION TO DISMISS** |
| Defendants | : | **THE AMENDED COMPLAINT** |

## I.      INTRODUCTION

On November 19, 2024, Plaintiff, Aaliyah Mungro ("Plaintiff" or "Mungro), filed a

Complaint against the City of Claremont, and individual Claremont police officers, and against

North Carolina State Bureau of Investigation ("NCSBI") Special Agent ("SA") Madison A.

Gambino ("SA Gambino"), Special Agent R.G Crawley ("SA Crawley"), SAs John/Jane Does

#'s 1-5, Special Agent in Charge ("SAG") Chris Laws ("SAG Laws"), and SAGs John/Jane Doe

#'s 1-2. (hereinafter referred to collectively as "SBI Defendants") alleging constitutional claims

pursuant to 42 U.S.C. § 1983 and numerous North Carolina intentional tort claims arising out of

the Plaintiff's arrest and prosecution for the murder and abuse of her seven-week-old son,

Kingston Knox ("Kingston"). Both the City of Claremont and the SBI Defendants filed Fed. R.

Civ. P. 12(b)(6) Motions to Dismiss, and in response, on April 25, 2025, pursuant to Fed. R. Civ.

P. 15(a)(1)(B), the Plaintiff filed an Amended Complaint ("AC"). DE 17.

Regarding the SBI Defendants, the AC alleges § 1983 claims for Fourth Amendment

Malicious Prosecution against SA Gambino, SA Crawley, and SAs John/Jane Does #'s 1-5

(Count I); a Due Process Claim against SA Gambino, SA Crawley and SAs John/Jane Does #'s

1-5 (Count II); a Supervisory Liability Claim against SAG Laws and SAGs John/Jane Doe #'s 1-

1

2 (Count IV); and a Conspiracy Claim against SA Gambino, SA Crawley, SAs John/Jane Does #'s 1-5, SAG Laws and SAGs John/Jane Doe #'s 1-2 (Count V). DE 17. In addition to the constitutional claims, the Plaintiff alleged North Carolina intentional tort claims for Malicious Prosecution against the SBI Defendants (Count VI); Obstruction of Justice against the SBI Defendants (Count VII); and Intentional Infliction of Emotional Distress ("IIED") against the SBI Defendants (Count VIII). DE 17. The claims were brought against the SBI Defendants in their individual capacities." DE 17, ¶¶ 10, 12. On July 8, 2025, the SBI Defendants filed a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the AC with an accompanying Memorandum of Law. DE 25, 27. The SBI Defendants' 12(b)(6) Motion seeks to dismiss all of Plaintiff's claims against all SBI Defendants with prejudice. For reasons that will be developed below, the SBI Defendants' Motion should be denied in part and granted in part.

## II.     STATEMENT OF THE ALLEGATIONS IN THE AC

On August 29, 2020, Plaintiff gave birth to Kingston. DE 17, ¶ 13. At the time, Plaintiff had two other children, La'Niha, age two, and Mahogany, age eleven months, and because she had a surgical procedure after the birth of Kingston, she was unable to care for all three children and needed help taking care of Kingston. DE 17, ¶¶ 14, 15, 16. Consequently, a friend of Plaintiff's, Phoebe Peterson ("Peterson"), became "the primary care giver to Kingston during his short life." DE 17, ¶ 16. "After Kingston was born, he lived with Peterson the majority of the time, with the exception of October 13, 2020, when he briefly visited his mother at her home." DE 17, ¶ 17. On October 17, 2020, the Plaintiff requested that Peterson drop Kingston off at her house around 12:30 pm. DE 17, ¶ 18. Peterson complied and shortly after dropping Kingston off she left. DE 17, ¶ 19. The Plaintiff had to work later that day, and after feeding Kingston, she laid on the bed with him until it was time to go to work. DE 17, ¶¶ 20, 21, 22. During this time,

2

Kingston was alert and awake. DE 17, ¶ 21. Shortly before going to work, Plaintiff gave Kingston his pacifier and he went to sleep. DE 17, ¶ 23. At 2:30 pm, with Kingston sleeping on the bed, Plaintiff left for work at a nearby Subway sandwich shop. DE 17, 22.

Kingston's father, Jerry Maurice Knox ("Knox"), was at the house, watching Kingston and the other children. DE 17, ¶¶ 15, 24. Sometime after Plaintiff left for work, Knox took a shower. DE 17, ¶ 25. After the shower, Kingston was still apparently sleeping, and Knox carefully picked him up from the bed to move him to the swing in the living room so he could feed him a bottle. DE 17, ¶¶ 26, 27. When Knox moved Kingston, the baby did not wake up, but he noticed blood coming from Kingston's nose, which he cleaned. DE 17, ¶ 27. Knox went into the kitchen to prepare a bottle, and when he returned to Kingston, he noticed more blood coming from his nose, and he "checked his body and realized he wasn't breathing." DE 17, ¶ 28. Knox did not have any pre-paid minutes left on his cell phone, so he ran to the Subway where the Plaintiff worked, and they both ran back to the house, and called 911 at around 4:42 pm. DE 17, ¶ 29. The EMTs arrived at 4:50 pm, and found that Kingston had blood from his nose, was not breathing, and had no heart activity. DE 17, ¶ 30. Kingston was taken to the Hospital while the EMTs attempted to resuscitate him, and he was officially pronounced dead at 5:42 pm, "although he had died well before that time." DE 17, ¶ 31.

SA Gambino, who was employed by the NCSBI, lead the investigation into Kingston' death "on behalf of the NCSBI, with the assistance of SA Crawley and/or SAs John/Jane Doe # 1-5", who "conduct[ed] interviews of witnesses and suspects." DE 17, ¶¶ 9, 32, 50. An autopsy was performed on Kingston on October 20, 2020, although the official autopsy report, which contained detailed information that was highly relevant to the investigation into Kingston's death, would not be released until March 5, 2021. DE 17, ¶¶ 33, 64, 68, 69, 70. Captain Long, of

3

the Claremont Police Department, attended the autopsy and took notes, which he provided to SA Gambino. DE 17, ¶ 34. The initial, unofficial findings were that Kingston died from blunt force head trauma to the left frontal lobe resulting in blood on the brain. DE 17, ¶¶ 35, 36. The unofficial findings also indicated that Kingston had suffered eleven (11) prior rib fractures, "which were older and in the process of healing." DE 17, ¶¶ 35, 36. After the initial findings had determined that Kingston's death was a homicide, both Captain Long and SA Gambino went back and listened to the interviews of the Plaintiff that had been conducted by SA Crawley and/or SAs John/Jane Doe # 1-5. DE 17, ¶¶ 32, 36, 37, 50.

In those interviews, Plaintiff denied ever hurting her son, but gave some hypothetical responses, stating that "if" she ever hurt Kingston it would not be intentionally. DE 17, ¶¶ 38, 39, 40. Plaintiff never stated in those interviews that she had harmed or killed Kingston, intentionally or unintentionally. DE 17, ¶ 40. To establish probable cause to arrest the Plaintiff for Murder and Child Abuse, both Captain Long and SA Gambino intentionally misconstrued Plaintiff's hypothetical responses as an admission, representing to the District Attorney and Magistrate Judge "that Plaintiff testified that she 'never intentionally killed her child.'" DE 17, ¶¶ 38, 39, 40, 46, 47, 48. In addition, knowing that Kingston had prior broken ribs "which were older and in the process of healing", and that the only other time the Plaintiff had seen Kingston was on October 13, 2020, just four (4) days before he died, SA Gambino changed Peterson's interview testimony to indicate that the visit had occurred "at least a week prior" to Kingston's death in an effort to make it seem like the Plaintiff was responsible for the broken ribs. DE 17, ¶ 43. SA Gambino also altered and mispresented Peterson's interviews to "indicate that she said when she picked Kingston up from the Plaintiff's on October 13, 2020, and attempted to lift him from the bassinet, he squealed as if in pain, and his sides appeared to be hurting." DE 17, ¶ 44.

4

Based on the above, the AC alleges that SA Gambino and Captain Long fabricated evidence to manufacture probable cause to arrest the Plaintiff for Murder and Child Abuse, and that this fabricated/manufactured evidence "w[as] the only grounds for probable cause to arrest the Plaintiff." DE 17, ¶¶ 46, 48, 74. SA Gambino relied on this fabricated/manufactured evidence to present her case against Plaintiff to the District Attorney and to obtain an arrest warrant from the Magistrate Judge. DE 17, ¶¶ 46, 47. SA Crawley, SAs John/Jane Doe #'s 1-5, SAG Laws and SAG John/Jane Does #'s 1-2 "assisted in the investigation into the death of Kingston, including conducting interviews of witnesses and suspects . . . and knew that the Plaintiff had not admitted to the murder of Kingston, and that there was insufficient evidence to arrest the Plaintiff for Child Abuse or Murder, and despite their knowledge, and their constitutional duty to intervene and stop the unconstitutional arrest of the Plaintiff, supported/condoned/acquiesced/agreed with the decision to arrest the Plaintiff, notwithstanding that they knew there was no probable cause and Defendants Long and Gambino had fabricated/manufactured evidence to support the arrest." DE 17, ¶ 50.

Additionally, in arresting Plaintiff on October 20, 2020, the SBI Defendants ignored exculpatory evidence that pointed to either Kingston's father, Knox, or his primary care giver, Peterson, as the person who murdered and abused Kingston. DE 17, ¶¶ 52-63. Knox was not only the only person caring for Kingston when the baby's nose was oozing blood and he was unresponsive, but also, he initially gave inconsistent versions of what happened to authorities, informing them that he had picked the baby up from the babysitter and was told that he was sick and vomiting. DE 17, ¶¶ 53, 54. Knox also had a criminal history of domestic violence that included child abuse of his oldest daughter, La'Niha, and an assault on the Plaintiff. DE 17, ¶¶ 56, 57, 58.

Peterson was Kingston's primary care giver—the person he lived with, and she had Kingston the entire time after his birth except for a brief period on October 13, 2020, and the afternoon on the day he died. DE 17, ¶¶ 16, 17, 18, 19, 60. Unlike the Plaintiff, Peterson had an extensive criminal history that included arrests for Assault with a Deadly Weapon, Simple Assault, Driving While Impaired, Larceny, and Possession of Stolen Property. DE 17, ¶ 61. More importantly, the SBI Defendants all knew from the unofficial autopsy findings on October 20, 2020, that Kingston had eleven (11) fractured ribs "which were older and in the process of healing", and therefore, based on the limited time Plaintiff had Kingston, were probably caused by Peterson. DE 17, ¶¶ 35, 36, 70, 73. As Plaintiff alleges, Peterson's interview statements were "very self-serving, and a clear attempt to shift blame for Kingston's death." DE 17, ¶ 62.

Based on the fabricated evidence that Plaintiff had admitted to killing and abusing Kingston, SA Gambino arrested Plaintiff for First Degree Murder and Child Abuse on October 20, 2020, three days after Kingston died, and approximately five months before the official autopsy report was released. DE 17, ¶¶ 39, 48, 49, 64. The Plaintiff was unable to make bail and she was incarcerated. DE 17, ¶ 51. A Grand Jury was empaneled, and the only witness present was SA Gambino. DE 17, ¶¶ 64, 65. SA Gambino relied upon the fabricated/manufactured evidence used to get the Arrest Warrant and intentionally mislead the Grand Jury into believing that Plaintiff had admitted to killing and abusing Kingston. DE 17, ¶¶ 65, 66. Based on SA Gambino's intentional misrepresentations, on November 17, 2020, Plaintiff was formally indicted for First Degree Murder and Child Abuse. DE 17, ¶¶ 64, 65, 66, 75, 76.

On March 5, 2020, the official autopsy report regarding Kingston's death was released. DE 17, ¶ 64. The official autopsy report conservatively placed the time of death at 4:00 pm on October 17, 2020, and found that the blow to the head that killed Kingston had to have occurred

6

four (4) to eighteen (18) hours before he died. DE 17, ¶ 68. This means that the latest Kingston could have been struck in the head was at 12:00 pm on October 17, 2020, before Kingston was dropped off by Peterson, and the earliest was 6:00 pm on October 16, 2020, when Kingston was in Peterson's care. DE 17, ¶ 68. The official autopsy report further found that Kingston had suffered another blow to the head approximately two (2) to three (3) weeks before his death, and that the rib fractures, and a fracture to his right wrist, had occurred approximately two (2) weeks before his death. DE 17, ¶ 69. These injuries occurred when Kingston was not in the Plaintiff's care/custody but instead was in Peterson's care/custody. DE 17, ¶ 69.

Even though the official autopsy report established that Plaintiff could not have killed and abused Kingston, because he was not in her custody at the time the fatal head blow occurred, or when the other, nonlethal injuries occurred, the prosecution against her continued until July 19, 2020, when the charges were dropped. DE 17, ¶¶ 71, 72, 73, 77, 78. In dismissing the charges, the District Attorney acknowledged that based on the official autopsy report, "the injuries could have happened 4 to 18 hours prior to the baby's death, and the infant was with numerous adults and children during that time." DE 17, ¶¶ 71, 72, 73. Plaintiff was innocent of the charges of Child Abuse and Murder regarding her son, and the criminal charges against her were maliciously brought by SA Gambino without probable cause. DE 17, ¶¶ 74, 78. The charges against her were terminated in her favor on July 19, 2022. DE 17, ¶ 78. As a result of being arrested without probable cause and maliciously prosecuted for the murder and abuse of her son, the Plaintiff spent six months in jail and lost the custody of her surviving children. DE 17, ¶ 79.

## III. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint only needs to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief". *See also Conley v. Gibson*,

355 U.S. 41, 47 (1957). The Supreme Court in *Twombly* reaffirmed this well-established understanding of Rule 8(a)(2), holding that a complaint "does not need detailed factual allegations", but it must provide "more than labels and conclusions, and formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, "Rule 8(a)(2) requires that 'a complaint . . . contain[] sufficient factual matter, accepted as true, to 'state a claim to relief that is <u>plausible</u> on its face' in the sense that the complaint's factual allegations must allow a 'court to draw the <u>reasonable inference</u> that the defendant is liable for the misconduct alleged.'" *Mcleary-Evans v. Md. DOT*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 557).

A Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is intended "to test the legal sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Accordingly, a "Rule 12(b)(6) Motion does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations", *Neitzke v. Williams*, 490 U.S. 319, 327 (1989), nor because it appears "that a recovery is very remote and unlikely." *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974). Instead, in determining a Rule 12(b)(6) Motion, the court "must accept as true all well-pleaded allegations and draw reasonable inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). As stated above, allegations are "well-pleaded" if they state a claim for relief that is plausible on its face, but this "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the unconstitutional conduct]." *Twombly*, 550 U.S. at 556.

If the Court determines that the allegations in the AC are not sufficient to state a claim for relief, under well-established Fourth Circuit law the Plaintiff should be given leave to file an amended complaint:

> A dismissal under Rule 12(b)(6) generally is not final or on the merits and *the court normally will give plaintiff leave to file an amended complaint*. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading.

*Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999).

## IV.    LEGAL ARGUMENTS

### A.    The AC sufficiently pleads plausible claims against SA Crawley.

Defendants argue that Plaintiff's allegations against SA Crawley amount to impermissible "group pleading" and that the AC fails to allege facts connecting Crawley to Plaintiff's claims.[1] Def's Mem. Law at 7. Defendants' argument "expect[s] Plaintiff['s] [AC] to contain far greater detail than what is required—and what is typically achievable without discovery." *Hensley v. Wellpath, LLC*, 2024 U.S. Dist. LEXIS 139351 at *19 (W.D. Va. Aug. 6, 2024).  As the Courts have held, "at this early stage in the litigation, a plaintiff [is not expected to] come to court fully armed with the requisite facts to prove their case." *Lanford v. Joyner*, 62 F.4th 122, 126 (4th Cir. 2023); *J.A. v. Miranda*, 2017 U.S. Dist. LEXIS 141643 at *7 (D. Md. Sept. 1, 2017) ("at the pleading stage, a plaintiff is not expected to possess complete knowledge of the defendant's alleged wrongful conduct, but need only submit facts sufficient to plead a plausible claim for relief."). For this reason, a complaint does not need to provide "detailed factual allegations",

---

[1]    Plaintiff will address the sufficiency of the allegations as to SAG Laws in the next section on Supervisory Liability.

9

*Twombly*, 550 U.S. at 555, but instead only needs "sufficient facts to allow the court to infer liability as to *each* defendant." *Langford*, 62 F.4th at 126 (citing *Iqbal*, 556 U.S. at 676) (emphasis in original); *J.A.*, 2017 U.S. Dist. LEXIS 141643 at *7-8 ("Indeed, the purpose of discovery is to establish the presence or absence of facts with which the plaintiff intends to prove his claim."). The pleading requirement under "Rule 8(a) is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer." *J.A.*, 2017 U.S. Dist. LEXIS 141643 at *8 (internal cite omitted). "The key is to generally identify those 'persons responsible for the problem'", which Plaintiff has done in pleading her claims against SA Crawley. *Id*. (internal cite omitted).

Contrary to Defendants' contention, the AC does not engage in "group pleading" against SA Crawley. The term "group pleading" is generally understood by the Courts to mean using the word "Defendants" collectively in a complaint, to refer to all Defendants. *Langford*, 62 F.4th at 125. The problem with this form of pleading is that it doesn't always "identify[ ] how each individual Defendant personally interacted with [the defendants]." *Id*. Here, Plaintiff did not use the collective noun "Defendants", but instead specifically identified SA Crawley's involvement in the unconstitutional arrest and prosecution of the Plaintiff. Specifically, the AC alleges that SA Crawley assisted SA Gambino in the investigation into Kingston's death, including conducting interviews of witnesses and suspects, "and knew that the Plaintiff had not admitted to the murder of Kingston, and that there was insufficient evidence to arrest the Plaintiff for Child Abuse or Murder, and despite their knowledge, and their constitutional duty to intervene and stop the unconstitutional arrest of the Plaintiff, supported/condoned/acquiesced/agreed with the decision to arrest the Plaintiff, notwithstanding that they knew there was no probable cause and

Defendants Long and Gambino had fabricated/manufactured evidence to support the arrest." DE 17, ¶ 50; *see also* ¶ 32.

Plaintiff has specifically alleged that SA Crawley was directly involved in the investigation into Kingston's death, knew through his involvement that Plaintiff never admitted to harming or killing her son, and that there was no probable cause to arrest her for the crimes, yet supported and agreed with the decision to arrest and prosecute the Plaintiff notwithstanding a lack of probable cause. The Courts have found similar pleadings sufficient to give the defendants fair notice of Plaintiff's claims against them and the underlying factual support:

> Here, the complaint alleges that Vigue "was the lead investigator of this attempted murder case," and that Copeland and Danielezyk were members of the investigative team. ECF 1, at 11 64. The complaint also alleges that Vigue, Copeland, and Danielezyk were "involved in th[e] investigation," *id.* at 8 ¶ 40, the three detectives "worked collaboratively during the investigation and shared information with one another as it was gathered," *id.* at 11 ¶ 65, and the Officer Defendants "intimidated [] Brockington, supplied him with the police's version of the facts and used suggestive tactics during the photo arrays."

*Thomas v. Balt. Police Dep't*, 2025 U.S. Dist. LEXIS 5742 AT *14 (D. Md. Jan. 20, 2025).

In addition, the AC alleges that SA Crawley and SA Gambino ignored exculpatory evidence in their agreement and support of the decision to arrest and prosecute the Plaintiff without probable cause. DE 17, ¶ 52-63. At the pleading stage, without having conducted discovery, which would include taking the deposition of SA Crawley, the allegations in the AC are sufficient to allege plausible § 1983 claims against SA Crawley for Malicious Prosecution, a Due Process violation, as well as North Carolina intentional tort claims for Malicious Prosecution and IIED. "The key is to generally identify those 'persons responsible for the problem'", which Plaintiff has done. *J.A.*, 2017 U.S. Dist. LEXIS 141643 at *8. SA Crawley has

"fair notice" of the claims and the grounds upon which those claims rest; accordingly, Defendants' 12(b)(6) Motion to Dismiss the claims against SA Crawley should be denied.

**B.     Plaintiff has sufficiently alleged a supervisory claim against SAG Laws.**

Count IV of the AC alleges a § 1983 Supervisory Liability claim against SAG Laws. DE 17. At the outset, a § 1983 Supervisory Liability claim is premised upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). To hold a supervisor liable for the constitutional injuries inflicted by their subordinates, the Plaintiff must establish:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799.

Defendants' argument does not focus on the above elements *per se*, but instead contends that the AC fails to allege "some degree of personal involvement in alleged deprivation of [Plaintiff's] rights", which is required to state a claim for Supervisory Liability. Defs' Mem. Law at 8. Contrary to Defendants' contention, at the pleading stage the AC has alleged sufficient facts to put SAG Laws on fair notice of Plaintiff's claims against him, and the grounds upon which those claims rest. Specifically, the AC alleges that SAG Laws oversaw and directed SA Gambino's and SA Crawley's investigation leading to the arrest and prosecution of the Plaintiff, and he was "actually or constructively aware that [their] conduct posed a pervasive and

12

unreasonable risk of constitutional injury and acquiesced in and was/were deliberately indifferent to that risk in violation of the Plaintiff's constitutional rights." DE 17, ¶¶ 11, 108, 110.

In support of these allegations, Plaintiff alleges that SAG Laws was aware that the Plaintiff had not admitted in interviews that she harmed or killed Kingston, and that with SAG Laws support, acquiescence, and agreement SA Gambino and SA Crawley had misrepresented the Plaintiff's interview statements to fabricate/manufacture probable cause to arrest her for Murder and Child Abuse. DE 17, ¶¶ 50, 106, 109. Plaintiff therefore alleged that SAG Laws was personally involved in the deprivation of the Plaintiff's Fourth Amendment rights. The AC further alleges SAG Laws had knowledge that SA Gambino and SA Crawley "had a history of fabricating evidence in order to obtain arrest warrants and indictments . . . and despite this knowledge did nothing to stop the unconstitutional conduct by Special Agents under [his] supervision, and instead tacitly approved or acquiesced in the unconstitutional conduct." DE 17, ¶ 107. Finally, Plaintiff alleges SAG Laws "deliberate indifference to the risk that Defendants SA Gambino, SA Crawley and SAs John/Jane Doe #'s 1-5 would violate the Plaintiff's constitutional rights by fabricating evidence for the purpose of arresting and prosecuting her for Child Abuse and Murder was the direct and proximate cause of the violation of the Plaintiff's constitutional rights." DE 17, ¶ 110.

As discussed above, Rule 8(a)(2)'s requirement of a claim for relief that is plausible on its face "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the unconstitutional conduct]." *Twombly*, 550 U.S. at 556. Based on the above allegations in the AC, Plaintiff has alleged enough facts in support of the Supervisory Liability claim against SAG Laws "to raise a reasonable expectation that discovery will reveal evidence" of his direct involvement in the

investigation and decision to arrest and prosecute the Plaintiff for Child Abuse and Murder, his knowledge that SA Gambino and SA Crawley had misrepresented Plaintiff's interview statements to fabricate/manufacture probable cause to arrest her, and had a history of doing this in other cases, and his acquiescence in or tacit approval of the unconstitutional conduct by his subordinates. The determining factor is not whether the Court believes "a complaint's factual allegations", *Neitzke*, 490 U.S. at 327, or whether it appears "that a recovery is very remote and unlikely" *Scheurer*, 416 U.S. at 236, but rather whether the Plaintiff has pled sufficient facts to put the Defendant on notice of the claims against him and the grounds for those claims. The AC provides SAG Laws with fair notice of the claims against him, and the grounds for those claims and therefore Defendants' Motion to Dismiss the Supervisory Claim against him should be denied.

**C.  SA Gambino and SA Crawley are not entitled to Qualified Immunity on the Fourth Amendment Malicious Prosecution claim**

Significantly, Defendants never challenged the sufficiency of the pleadings regarding SA Gambino's claims against Defendants, but instead argue that based on those pleadings Defendants have qualified immunity as to Plaintiff's Fourth Amendment Malicious Prosecution claim against SA Gambino and SA Crawley. Qualified Immunity is an affirmative defense, and the burden of establishing the defense "rests on the party seeking to invoke it." *Hicks v. Ferreyra*, 64 F.4th 156, 169 (4th Cir. 2023). To determine whether Qualified Immunity applies, the Courts "ordinarily employ a two-step inquiry." *Id*. First, it must be determined whether the pleadings, taken as true, establish that SA Gambino's and SA Crawley's conduct violated the Plaintiff's constitutional rights. *Id*. Second, if the pleadings establish that Defendants conduct violated the Plaintiff's constitutional rights, it must be determined if the right was clearly established at the time of their conduct. *Id*. Defendants' Qualified Immunity analysis focuses on

the first step, and they argue that Defendants had probable cause to arrest and prosecute the Plaintiff for Murder and Child Abuse based on the Indictment that was handed down on November 17, 2020, and therefore, Plaintiff's Fourth Amendment rights were not violated. Defs' Mem. Law at 11. In making this argument, Defendants either ignored or misrepresented the allegations in the AC.

Malicious Prosecution claims "cover[ ] unconstitutional seizures supported by legal process." *English v. Clarke*, 90 F.4th 636, 647 (4th Cir. 2024). To state a claim for Fourth Amendment Malicious Prosecution, the Plaintiff must allege facts from which it can be inferred that Defendants "(1) caused (2) a seizure of [Plaintiff] pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [Plaintiffs] favor." *Id*. at 647. In this case, the Plaintiff was initially arrested and detained pursuant to an arrest warrant issued by a Magistrate Judge, and subsequently she was Indicted for Murder and Child Abuse. While an Indictment "[o]ften . . . is conclusive evidence that the officers had probable cause to arrest", there is an exception "when an officer misled or pressured the prosecution." *Harris v. Town of S. Pines*, 110 F.4th 633, 643 (4th Cir. 2024). Accordingly, "a grand jury's decision to indict . . . will [not] shield a police officer who deliberately supplied misleading information that influenced the decision." *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (internal cite omitted); *Harris*, 110 F.4th at 643-44 ("If the officers had made false or incomplete statements to the grand jury, we could easily conclude that the indictment does not insulate them from liability.").

The AC alleges that SA Gambino, with the assistance and approval of SA Crawley, misrepresented Plaintiff's interview statements by wrongfully claiming that she admitted to harming and killing her son for the purpose of fabricating/manufacturing probable cause to arrest her and prosecute her for Murder and Child Abuse. DE 17, ¶¶ 36, 37, 38, 39, 40, 45, 46, 48, 74.

15

In addition, Gambino, with the assistance and approval of SA Crawley, altered Peterson's interview statements for the purpose of fabricating/manufacturing probable cause to arrest and prosecute the Plaintiff for Murder and Child Abuse. DE 17, ¶¶ 43, 44, 45. This fabricated/manufactured evidence was "the only grounds for probable to arrest the Plaintiff," and SA Gambino presented this manufactured evidence to the District Attorney, who then authorized Plaintiff's arrest, and to the Magistrate Judge to obtain an arrest warrant. DE 17, ¶¶ 46, 47. In addition, SA Gambino, who was the only witness to appear before the Grand Jury, intentionally relied upon the fabricated/manufactured evidence to obtain an Indictment for Child Abuse and Murder against the Plaintiff. DE 17, ¶¶ 65, 66.

In testifying before the Grand Jury, SA Gambino also omitted exculpatory evidence that established that Plaintiff could not have caused Kingston's broken ribs. At the time that Plaintiff was arrested and charged, Defendants knew that she only had custody of Kingston for a brief time on October 13, 2020, and again for a brief time during the afternoon of October 17, 2020. DE 17, ¶¶ 42, 66. The initial autopsy findings on October 20, 2020, indicated that Kingston had eleven (11) prior rib fractures "which were older and in the process of healing." DE 17, ¶ 35. Because the rib fractures were older and in the process of healing, they could not have been caused by Plaintiff on October 17, 2020 or October 13, 2020, when she had custody of Kingston for a short period of time, and instead had to be caused by Peterson, who was Kingston's primary care giver and had custody of him at all other times. DE 17, ¶ 60.

Fabricated or manufactured evidence cannot serve as the basis for probable cause. *Manuel v. City of Joliet*, 589 U.S. 357, 367 (2007) (recognizing that an absence of probable cause "can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements."); *Miller v. Prince*

*George's Cty.*, 475 F.3d 621, 632 (4th Cir. 2007) ("[T]he constitution [does] not permit a police officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause."). In support of their contention that the Indictment established probable cause to arrest and prosecute Plaintiff, Defendants argue that while Plaintiff alleges that SA Gambino "intentionally supplied misleading and inaccurate information" to the Grand Jury, she "offers no sufficient supporting allegations." Defs' Mem. Law at 11. This is belied by the above allegations, which Defendants ignore in their analysis of the issue, and which specifically allege the misrepresentation or fabrication that Gambino presented to the Grand Jury to establish probable cause and secure an Indictment. On a 12(b)(6) Motione, these allegations, and any inferences therefrom, must be taken as true. *Mays*, 992 F.3d at 299.

Defendants also argue that the exculpatory evidence that Gambino omitted from his Grand Jury presentation was derived from the official autopsy report that was released on March 17, 2021, well after the Grand Jury proceedings. This contention also ignores or misrepresents the allegations in the AC. As pled, exculpatory evidence was known by the Defendants on October 20, 2020, when the Plaintiff was arrested. DE 17, ¶¶ 52-62. Most importantly, on October 20, 2020, Defendants knew that Kingston had eleven (11) prior broken ribs "which were older and in the process of healing." DE 17, ¶ 35. Furthermore, Defendants knew on October 20, 2020, that the Plaintiff only had custody of Kingston for a short time on October 13, 2020, and on the afternoon of his death, October 17, 2020. DE 17, ¶¶ 42, 66. Accordingly, on October 20, 2020, SA Gambino knew that there was exculpatory evidence exonerating Plaintiff, namely "that Kingston had suffered broken ribs that were healing and therefore older than four days" and hence it was Peterson, and not Plaintiff who was "taking care of Kingston when the ribs were

broken." DE 17, ¶¶ 43, 60. These allegations, and any inferences therefrom, must be taken as true. *Mays*, 992 F.3d at 299.

Accordingly, for the above stated reasons, Plaintiff sufficiently alleged that SA Gambino intentionally misrepresented and fabricated evidence, and omitted exculpatory evidence, when she testified to the Grand Jury, and that this fabricated evidence influenced the Grand Jury's decision. *Durham*, 690 F.3d at 189. Accordingly, because the evidence used to secure the Indictment was misrepresented/fabricated, Defendants did not have probable cause to arrest and prosecute the Plaintiff for Child Abuse and Murder, and the AC alleges a constitutional violation against SA Gambino and SA Crawley. *Manuel*, 589 U.S. at 367; *Miller*, 475 F.3d at 632. Because the Plaintiff has sufficiently alleged a constitutional violation, pursuant to the first prong of the analysis, SA Gambino and SA Crawley are not entitled to Qualified Immunity. *Hicks*, 64 F.4th at 169.

While Defendants do not argue the second step of the Qualified Immunity analysis, Plaintiff's Fourth Amendment "right to be free from a seizure and prosecution lacking in probable cause and based upon the deliberate concealment or fabrication of evidence was clearly established at the time of [Plaintiff's] arrest." *Braswell v. Medina*, 255 N.C. App. 217, 227 (2017). In 2007, both the Supreme Court and Fourth Circuit recognized that mispresented or fabricated evidence cannot form the basis for probable cause to arrest and prosecute. *Manuel*, 589 U.S. at 367; *Miller*, 475 F.3d at 632. In 2012, the Fourth Circuit recognized in *Durham* that an Indictment obtained with mispresented or fabricated evidence lacks probable cause and does not insulate a police officer from liability for false arrest/malicious prosecution. *Durham*, 690 F.3d at 189. In 2017, a North Carolina Appellate Court held "a reasonable police officer would know that fabricating probable cause, thereby effectuating a seizure, would violate a suspect's

18

clearly established Fourth Amendment right to be free from unreasonable seizures." *Braswell*, 255 N.C. App. at 227. Therefore, SA Gambino and SA Crawley were on notice on October 20, 2020, when they misrepresented and/or fabricated evidence to establish probable cause to arrest the Plaintiff, and on November 17, 2017, when SA Gambino misrepresented and/or fabricated and/or omitted exculpatory evidence before the Grand Jury to get an Indictment, that their conduct violated the Fourth Amendment. Accordingly, they are not entitled to Qualified Immunity pursuant to the second step in the analysis.

> **D.** **The allegations in the AC, which must be taken as true, sufficiently plead a Fourteenth Amendment Due Process claim based on the fabrication of evidence.**

Count II of the AC alleges a Fourteenth Amendment Due Process claim based on SA Gambino and SA Crawley's fabrication of evidence. DE 17. Unlike a Fourth Amendment Malicious Prosecution claim, where "the alleged harm is plaintiff's wrongful detention without probable cause", in a Due Process claim based on the fabrication of evidence, "the alleged harm is that the entire panoply of rights afforded to criminal defendants was infected by the fabricated evidence, thus wrongfully depriving the defendant of their liberty." *Harris v. Town of S. Pines*, 110 F.4th 633, 646 (4th Cir. 2024). As the *Harris* Court explained, "'the harm of the fabrication is corrupting' the criminal process 'regardless . . . of the time in the proceeding that the corruption occurs.' (cite omitted). If the initiation of criminal proceedings rests on fabricated evidence, that harm has occurred. It does not matter whether the defendant is subsequently detained or whether there is probable cause; if the officers fabricate evidence, the harm has been done." *Id.* at 647.

Defendants argue that the allegations in the AC are insufficient to establish fabrication. Defs' Mem. Law at 14. The AC alleges that in her pre-arrest interviews the Plaintiff never admitted to harming or killing Kingston, either intentionally or unintentionally. DE 17, ¶ 40.

Instead, Plaintiff stated that "if" she ever harmed her son it would not be intentional. DE 17, ¶ 39. SA Gambino and Captain Long intentionally misconstrued Plaintiff's hypothetical "if" statement, and fabricated an admission, namely, that Plaintiff stated in the interviews that she "never intentionally killed her child", to establish probable cause to arrest her. DE 17, ¶¶ 37, 38, 39, 40, 48. Contrary to Defendants' contention, this is not a dispute about testimony; Gambino and Long lied and intentionally fabricated an admission by the Plaintiff to establish probable cause to arrest the Plaintiff. *Id*. In addition, Gambino and Long fabricated the time when Plaintiff had last seen Kingston to make it more likely that the baby was in Plaintiff's custody at the time the ribs were broken. DE 17, ¶¶ 41, 42, 43, 44, 45. This fabricated/manufactured evidence was "the only ground for probable cause to arrest the Plaintiff." DE 17, ¶ 46.

"The knowing or intentional fabrication of false testimony to obtain an arrest warrant implicates a criminal defendant's Fourth Amendment rights, *Franks v. Delaware*, 438 U.S. 154, 171, 57 L.ED 2d 667, 98 S. Ct. 2674 (1978), and will support a § 1983 claim if the false statement was necessary to the finding of probable cause, *Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994)". *Dutton v. Montgomery Cnty.*, 94 F. Supp.2d 663, 665 (D.Md. 2000). While this is not a Fourth Amendment claim, but instead a Due Process claim, the principle that fabricated testimony cannot establish a basis to initiate criminal proceedings applies with equal force. *Harris*, 110 F.4th at 646 ("[T]he alleged harm in a due process fabrication of evidence case is the 'wrongful initiation of prosecution'."). For the above stated reasons, the AC alleged sufficient facts to establish a Due Process claim based on the fabrication of testimony/evidence, and accordingly Defendants' Motion to Dismiss Count II of the AC should be denied.

E.    **The AC sufficiently alleges a § 1983 Conspiracy claim against SA Gambino and Captain Long.**

A § 1983 conspiracy requires a showing that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of constitutional rights." *Hinckle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). There must be evidence of a meeting of the minds, which can be either direct or circumstantial. *Id*. Accordingly, "[t]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Wiggins v, 11 Kew Garden Court*, 497 Fed. Appx. 262, 264 (4th Cir. 2012). Defendants argue that Plaintiff has failed to "allege any agreement, nor steps in the investigation to base an agreement, nor any intent by any of the defendants to have an agreement." Defs' Mem. Law at 17. Contrary to Defendants' contention, as to SA Gambino and Captain Long the AC alleges facts from which it can be inferred that the two had an agreement to violate the Plaintiff's Constitutional rights.

Specifically, the AC alleges that Captain Long was in charge of the investigation into Kingston's death on behalf of the Claremont Police Department, and SA Gambino was in charge of the investigation on behalf of the NCSBI. DE 17, ¶ 32. After the initial autopsy findings, Gambino and Long listened to tapes of Plaintiff's interviews, and "conspired to misconstrue what the Plaintiff said in the interviews and to manufacture evidence for the purpose of establishing probable cause to arrest the Plaintiff." DE 17, ¶¶ 36, 37. The AC then alleges how SA Gambino and Captain Long, acting jointly, fabricated evidence to manufacture probable cause. DE 17, ¶¶ 38, 39, 40. Based on this fabricated evidence, Gambino and Long arrested the Plaintiff on October 20, 2020. DE 17, ¶ 48. From these allegations it can be inferred that Gambino and Long had an agreement to fabricate evidence to manufacture probable cause to arrest the Plaintiff in violation of her constitutional rights. *Manuel*, 589 U.S. at 367; *Miller*, 475 F.3d at 632. It also can be inferred that it was their intent to fabricate evidence in violation of the

21

Plaintiff's rights. Accordingly, Plaintiff has alleged "enough facts to raise a reasonable expectation that discovery will reveal evidence of" unconstitutional conspiracy between SA Gambino and Captain Long, and Defendants' Motion to Dismiss the Conspiracy claim as to them should be denied.

**F.** **SBI Defendants are not entitled to immunity for Plaintiff intentional tort claims**.

The SBI Defendants argue that the Court lacks subject matter jurisdiction pursuant to the North Carolina Tort Claims Act, which "provides the exclusive jurisdiction for claims of negligence against state officials acting in their official capacity." Defs' Mem. Law at 17. The AC does not allege "negligence" claims against the SBI Defendants in their "official capacity", but instead alleges intentional tort claims against the SBI Defendants in their "individual capacities". DE 17, ¶¶ 10, 12. Accordingly, the North Carolina Tort Claims Act does not apply to Plaintiff intentional tort claims. Nor are Plaintiff's intentional tort claims barred by sovereign immunity. Eleventh Amendment immunity only bars actions against state officials in their "official capacity" in Federal Court, because it is "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Se. Pub. Safety Grp., Inc. v. Munn*, 2024 U.S. App. LEXIS 27543 at *6 (4th Cir. Oct. 30, 2024). As stated above, Plaintiff did not sue the SBI Defendants in their "official capacities" but instead sued them in their "individual capacities" and therefore the claims are not barred by sovereign immunity. *Longo v. Aspinwall*, 2019 U.S. Dist. LEXIS 118612 at *14. (W.D.N.C. July 17, 2019) ("At this early stage of the litigation, Plaintiff's allegations sufficiently assert claims against Defendant [ ] in her individual capacity.').

**G.** **Plaintiff has sufficiently alleged a North Carolina Common Law Claim for Malicious Prosecution against the SBI Defendants.**

22

Count VI of the AC alleges a North Carolina State Law claim for Malicious Prosecution against the SBI Defendants. DE 17. The SBI Defendants contend "Plaintiff fails to sufficiently plead a claim of North Carolina law malicious prosecution against Defendants." In support of their position, Defendants incorrectly argue that Plaintiff alleged that "Gambino was misleading in her Grand Jury testimony by not including the autopsy", and because the autopsy report was not released until March 5, 2021, "Gambino was incapable of omitting a report that did not yet exist." While the AC alleges that it was a "rush to judgment" to arrest the Plaintiff before the official autopsy report was released, (DE 17, ¶¶ 63, 64), contrary to Defendant's characterization of the pleadings, Plaintiff expressly alleged that SA Gambino misrepresented/fabricated evidence on October 20, 2020, to manufacture probable cause to arrest the Plaintiff, and that this fabricated evidence was "the only grounds for probable cause to arrest the Plaintiff." DE 17, ¶¶ 37, 38, 39, 40, 41, 42, 43, 44, 45, 46. More specifically, the AC alleges that this misrepresentation/fabrication consisted, in part, of intentionally changing the Plaintiff's interview statements into an admission that she killed Kingston, when she never "said in the interviews, or anywhere else, that she killed Kingston, intentionally or unintentionally." DE 17, ¶¶ 37, 38, 39, 40. Furthermore, the AC alleges that SA Gambino relied on this intentionally fabricated admission to secure an Indictment against the Plaintiff. DE 17, ¶ 66. Accordingly, contrary to Defendants' contention, Plaintiff's Malicious Prosecution claim is not based on the March 5, 2021 official autopsy report, but instead is based on evidence SA Gambino fabricated on October 20, 2020, which, as alleged, was based on deliberate falsehoods and reckless disregard for the Plaintiff's rights.

The SBI Defendants also argue that Plaintiff failed to sufficiently allege malice, which is one of the requirements for a North Carolina State Malicious Prosecution claim. *Braswell*, 255

N.C. App. at 228. "[M]alice can be inferred from the want of probable cause alone." *Id*.at 229. As discussed above, the AC alleges very specifically that the only evidence supporting probable cause was fabricated by SA Gambino, and, as the Court's have held, fabricated evidence cannot form the basis for probable cause. *Manuel*, 589 U.S. at 367; *Miller*, 475 F.3d at 632. Accordingly, Plaintiff has sufficiently alleged that the SBI Defendants lacked probable cause to arrest and prosecute the Plaintiff and hence has sufficiently alleged malice. *Braswell*, 255 N.C. App. at 229. In addition, malice can be established where the "defendant acted with reckless and wanton disregard for plaintiff's rights." *Id*. In *Braswell*, the court found that a "reckless and wanton disregard for plaintiff's rights" was established where the police officer "fabricated evidence in order to cause [the plaintiff] to be prosecuted for that offense." *Id*. Plaintiff has sufficiently pleaded that Gambino fabricated evidence for the purpose of arresting and prosecuting Plaintiff for the crimes of Child Abuse and Murder. Accordingly, Plaintiff has sufficiently pled malice. *Id*. For the above stated reasons, Plaintiff has sufficiently alleged a State Malicious Prosecution claim against the SBI Defendants and their Motion to Dismiss Count VI of the AC should be denied.

**H.     Plaintiff has sufficiently alleged an IIED claim against the SBI Defendants.**

Count VIII of the AC alleges a claim for IIED. The SBI Defendants argue "Plaintiff cannot meet the elements of an IIED claim because she cannot show extreme or outrageous conduct or that she suffered severe emotional distress."  The elements for an IIED claim are "(1) extreme and outrageous conduct [by the defendant], (2) which is intended to cause and does cause (3) severe emotional distress to another." *Turner v. Thomas*, 369 N.C. 419, 427 (2016). A claim for IIED can also be established where the defendants conduct constituted "'an abuse by the actor of a position . . . which gives him . . . power to affect' the interests of another." *Id*.

Similar to this case, in *Turner* the allegations in the complaint "paint[ed] a picture of law enforcement officials deliberately abusing their authority as public officials to manipulate evidence and distort a case for the purpose of reaching a foreordained conclusion of guilt." *Id.* at 428. Based on the allegations regarding the manipulation of evidence, the Court had "no[ ] doubt that plaintiff's complaint alleged extreme and outrageous conduct by these defendants sufficient to withstand a Rule 12(b)(6) motion to dismiss." *Turner*, 369 N.C. at 428. In this case, the allegations in the AC regarding SA Gambino's fabrication of evidence for the purpose of manufacturing probable cause clearly establish an abuse of her power and authority and therefore satisfies the IIED element of extreme and outrageous conduct. *Id.* Accordingly, Plaintiff has alleged sufficient facts establishing extreme and outrageous conduct.

Plaintiff also has alleged sufficient facts establishing that she suffered severe emotional distress. The AC alleges that as a result of the SBI Defendants' extreme and outrageous conduct, the Plaintiff was jailed for six months, lost custody of her two surviving children and is in fight to get them back, and suffered from "a loss reputation, severe emotional distress and mental anguish, loss of enjoyment of life, and loss of her emotional bond with her two surviving children." DE 17, ¶¶ 79, 80, 81. In *Turner*, the Court found similar allegations sufficient to allege severe emotional distress. *Turner*, 369 N.C. at 429. Accordingly, "[t]aking all of plaintiff's allegations in the light most favorable to h[er], as we must at the pleading stage, [ ] plaintiff has alleged elements of intentional infliction of emotional distress sufficient to withstand a motion to dismiss made pursuant to Rule 12(b((6)." The SBI Defendants' Motion to dismiss Count VIII of the AC should therefore be denied.

V.      **CONCLUSION**

For the above stated reasons, the Court should enter the attached Order.

RESPECTFULLY SUBMITTED,


BY: *s/ Robert A. Greenberg*_____
Robert A. Greenberg
MEIROWITZ & WASSERBERG, LLP
105 N. 6TH Street
Wilmington, North Carolina 28401
Cell: (901) 274-9937
Fax: (646) 432-6887
Email: bobby@mwinjurylaw.com


By: *s/ Alan Denenberg*_____
Alan E. Denenberg
ABRAMSON & DENENBERG, P.C.
1315 Walnut St., Suite 500
Philadelphia, PA 19107
(215) 546-1345 Ext. 104
Email: adenenberg@adlawfirm.com

26

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
No.: 5:24-CV-00249-KDB-DCK

AALIYAH MUNGRO,                          :
                                         :
            Plaintiff                    :
      v.                                 :
                                         :
CITY OF CLAREMONT, et al.                :
                                         :
            Defendants                   :

**ORDER**

AND NOW, this                day of                2025, after consideration of the

SBI Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the Amended Complaint and

Plaintiff's Response thereto, it is hereby **ORDERED** that said Motion is **GRANTED IN PART**

and **DENIED IN PART.**

      **IT IS GRANTED** as to SA Crawley and SAG Laws on the § 1983 Conspiracy claim

(Count V) and to all SBI Defendants on the Obstruction of Justice claim (Count VII).

      **IT IS DENIED** as to all other claims against all SBI Defendants.


                              BY THE COURT:


                              _____
                                                              J.

**CERTIFICATION OF INTELLIGENCE USED IN PREPARATION OF FILING**

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw and Lexus.

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided,

August 18, 2025

BY: *s/ Robert A. Greenberg*
Robert A. Greenberg
Attorney for Plaintiff

By: *s/ Alan Denenberg*
Alan E. Denenberg
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF. I further certify that I electronically served counsel for

defendants as indicated below by doing so.

J. Locke Milholland, IV
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602-0629
jmilholland@ncdoj.gov

Christian Ferlan
Attorney for Claremont PD Defendants
Hall, Booth, Smith P.C.
11215 N. Community House Dr., Ste 750
Charlotte, NC 28277105 N. 6th St.
Wilmington, NC 28401
CFerlan@HallBoothSmith.com

August 18, 2025

BY: *s/ Robert A. Greenberg*
Robert A. Greenberg
Attorney for Plaintiff

By: *s/ Alan Denenberg*
Alan E. Denenberg
Attorney for Plaintiff